IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
-------------------------------------------------x
                                                 :
CHARLOTINE DUVERGE                               :        3:10 CV 1922 (JGM)
                                                 :
v.                                               :
                                                 :
UNITED STATES OF AMERICA                         :
                                                 :        DATE: APRIL 7, 2014
-------------------------------------------------x
```

RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On December 7, 2010, plaintiff Charlotine Duverge, who was an inmate at Federal Correctional Institution in Danbury, Connecticut ["FCI Danbury"] at the time the allegations in her complaint occurred, commenced this action pro se under the Federal Tort Claims Act ["FTCA"], 28 U.S.C. § 2671, alleging injuries arising out of treatment by her counselor following an asthma attack on May 4, 2008, and the medical treatment received thereafter. (Dkt. #1).[1]  Specifically, plaintiff alleges that her counselor caused her to suffer an asthma attack, injured her arm and shoulder, and gave her an overdose of asthma medication causing her to have a mild heart attack.  (Id. at 2-4).  She also alleges that following this incident, "[d]ue to the lack of due diligence and delay in access to proper medical treatment, [she] suffered and continues to suffer[,] . . . severe pain and numbness in her entire [right] side[.]" (Dkt. #1, at 5).

On May 25, 2011, U.S. District Judge Janet Bond Arterton filed an Initial Review Order in which she permitted plaintiff the "opportunity to address the government's response to her [FTCA] claims."  (Dkt. #4, at 2-3).  On September 9, 2011, defendant filed its answer

---

[1]In her complaint, plaintiff noted that this Court is "already aware of the inadequate medical care at FCI Danbury," from her previous lawsuit, Duverge v. Zickefoose, 3:09 CV 45 (SRU). (Dkt. #1, at 8).  As discussed in more detail in Section II.A.2 infra, on February 8, 2010, U.S. District Judge Stefan R. Underhill denied her habeas petition as moot, as she had been transferred out of FCI Danbury.  2010 WL 466709, at *1.

(Dkt. #7), along with a Motion to Transfer Venue to the District of Minnesota as plaintiff was incarcerated at FCI Waseca at the time of filing the complaint.  (Dkts. ##8-9; <u>see</u> Dkts. ##11, 13-14).  Judge Arterton denied defendant's motion, staying and administratively closing the case while plaintiff remained in Waseca.  (Dkt. #15).  Consistent with Judge Arterton's order, discovery proceeded (<u>see</u> Dkt. #15; <u>see also</u> Dkts. ##17-20), and on July 11, 2012, plaintiff was released, and she relocated to Massachusetts.  (Dkt. #21).  Counsel appeared for plaintiff and on December 7, 2012, the case was reopened.  (Dkts. ##22-25, 27).  In the following months, counsel withdrew their appearances, and the parties consented to the jurisdiction of this Magistrate Judge; the case was transferred accordingly. (Dkts. ##31-36, 38-42).[2]

On February 6, 2014, defendant filed the pending Motion for Summary Judgment, with brief, Local Rule 56(a)1 Statement, Notice to Pro Se Litigant Opposing a Motion for Summary Judgment ["Rule 56 Notice"], and exhibits in support.[3]  (Dkt. #66).  On February 28, 2014, plaintiff, once again proceeding <u>pro se</u>, filed her brief in opposition.  (Dkt. #67).

For the reasons set forth below, defendant's Motion for Summary Judgment (Dkt. #66) is <u>denied</u>.

## I. FACTUAL BACKGROUND

As an initial matter, neither party complied with Local Rule 56(a) as plaintiff did not file a Rule 56(a)2 Statement nor did she offer any exhibits in support, and although

---

[2]Thereafter, on September 10, 2013, <u>pro bono</u> counsel was appointed for plaintiff for settlement purposes only, and when the case did not settle after such a conference, counsel withdrew their appearances.  (Dkts. ##43-45, 48-60).

[3]Attached to defendant's motion and brief is a copy of a Motion to Stay Sentence for Medical Needs While Appeal is Pending, filed in 1:05-cr-10265-WGY filed on June 2, 2008 (Exh. A); and copies of Rule 56 of the Local Rules of Civil Procedure and Rule 56 of the Federal Rules of Civil Procedure (Exh. B).

defendant filed a Rule 56(a)1 Statement, it failed to cite support for its five itemized statements. Local Rule 56(a)1 requires that the party moving for summary judgment include a "Local Rule 56(a) 1 Statement," which sets forth "a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried," D. CONN. L. R. Civ. P. 56(a)1, "followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." D. CONN. L. R. CIV. P. 56(a)3. "The 'specific citation' obligation of this Local Rule requires counsel and pro se parties to cite to specific pages" referenced in the Local Rule 56(a) statements. Id. "[F]ailure to provide specific citations to evidence in the record . . . may result in the Court deeming certain facts that are supported by the evidence admitted . . . or . . . when the movant fails to comply, [the Court may issue an] order denying the motion for summary judgment[.]" Id. That said, however, "[a] defendant filing a motion for summary judgment is not required to file affidavits or other admissible evidence disproving the plaintiff's claims[,]" Johnson-Barnwell v. FCI Danbury, No. 3:10 CV 1301 (DJS), 2014 WL 839247, at *4 (D. Conn. Mar. 4, 2014), but rather, "the moving party may succeed by showing that little or no evidence exists to support the plaintiff's claims." Id., citing Ockimey v. Town of Hempstead, 425 F. App'x 45 (2d Cir. 2011).

Plaintiff, however, was apprised of the requirement of submitting admissible evidence demonstrating a genuine issue for trial as attached to defendant's Motion was the Notice to Pro Se Litigant and copies of the applicable federal and local civil rules. (See Dkt. #66, Rule 56 Notice & Exh. B). Although plaintiff's failure to comply with the Local Rules could, by itself, result in granting summary judgment in defendant's favor, the Court declines to impose such a sanction on plaintiff here. Rather, "[i]n deference to . . . [p]laintiff's pro se

3

status," this Court, "to the extent possible, will regard . . . [p]laintiff's version of the facts contained in [her] opposition (excluding arguments or conclusory statements) as responsive" to defendant's Local Rule 56(a)1 Statement.  Wilks v. Elizabeth Arden, Inc., 507 F. Supp. 2d 179, 185 (D. Conn. 2007).

In this case, defendant's Local Rule 56(a) 1 Statement is limited to the following five statements: (1) plaintiff did not include a formal demand for damages under the FTCA in her two previous federal court actions, but could have; (2) plaintiff made references in her previous filings to the conditions of her imprisonment while at FCI Danbury; (3) plaintiff has not disclosed an expert witness, nor has she produced an expert report; (4) plaintiff's complaint is barred by collateral estoppel; and (5) plaintiff cannot make out her cause of action under Connecticut law because her complaint is grounded in medical negligence/malpractice and she does not have an expert.  (Defendant's 56(a)1 Statement). Additionally, of the five statements in defendant's Local Rule 56(a)1 Statement, three, in fact, call for legal conclusions (Nos. 1, 4 and 5), and are not statements of material fact.  Thus, the Court cannot deem them admitted.   Therefore, the only statements deemed admitted are that plaintiff made references in her previous filings to the conditions of her imprisonment while at FCI Danbury (No. 2), and that she has not disclosed an expert witness, nor has she produced an expert report (No. 3).

## II. DISCUSSION

The standard for summary judgment is well established.  The moving party is entitled to summary judgment if it demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a). This showing may be made by depositions, affidavits, interrogatory answers, admissions, or other exhibits in the

4

record. FED. R. CIV. P. 56(c).   "On summary judgment the inferences to be drawn from the underlying facts contained in the [moving party's] materials must be viewed in the light most favorable to the party opposing the motion." Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970), quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).   "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment.'" Bouboulis v. Transp. Workers Union of Am., 442 F.3d 55, 59 (2d Cir. 2006), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Defendant moves for summary judgment on grounds that plaintiff's FTCA action is barred by the doctrine of collateral estoppel (Dkt. #66, Brief at 3-4); and that plaintiff has no expert evidence to sustain her claim of negligence, without which under Connecticut law, she is barred from recovering any damages (id. at 4-5).   In response, plaintiff counters that the cases upon which defendant relies in support of its collateral estoppel argument are "irrelevant to the present case[,]" as there was no final judgment ever entered in the previous case; and, defendant has "enough evidence and knowledge regarding plaintiff's serious medical conditions[,]" such that defendant's claim that plaintiff needs an expert must fail.  (Dkt. #67, at 1-2).

A. COLLATERAL ESTOPPEL

The doctrine of collateral estoppel provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."  United States v. U.S. Currency in the Amount of $119,984.00, 304 F.3d 165, 172 (2d Cir. 2002)(internal quotations & citations

omitted).  Issue preclusion, or collateral estoppel, applies to bar the litigation of an issue when:

> (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.

Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006)(internal quotations & citation omitted).  All four of the foregoing elements "must be met, although the allocation of the burden of proof is divided[,]" with the "burden of showing that the issues are identical and were necessarily decided in the prior action" resting with the party seeking to apply collateral estoppel, and the "burden of showing that the prior action did not afford a full and fair opportunity to litigate the issues" resting with the party opposing the application of issue preclusion.  Proctor v. LeClaire, 715 F.3d 402, 414 (2d Cir. 2013)(internal quotations & citation omitted).

### 1. DISTRICT OF MASSACHUSETTS CASE

Defendant contends that the "initial filing" in plaintiff's case in the U.S. District Court for the District of Massachusetts, which is attached to defendant's Motion, "references the same 'asthma' incident which forms the basis of the underlying complaint in the above referenced case, [and] could have contained all of the allegations that plaintiff makes herein but for some reason plaintiff chose not to do so."  (Dkt. #66, Brief at 3 & Exh. A).  As stated above, defendant is moving for summary judgment on grounds of collateral estoppel. However, defendant's argument confuses the doctrine of collateral estoppel with the doctrine of res judicata.  "The doctrine of res judicata, or claim preclusion, provides that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  Faraday v. Blanchette, 596 F.

Supp. 2d 508, 514 (D. Conn. 2009)(emphasis added)(internal quotations & citation omitted). On the other hand, as explained above, collateral estoppel, or issue preclusion, "provides that 'once a court had decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" Id. (citations & internal quotations omitted).

The "initial filing" document upon which defendant relies is captioned a "Motion to Stay Sentence for Medical Needs While Appeal is Pending[,]" and was filed in plaintiff's criminal case, and it bears a docket number "128[,]" which hardly suggests an "initial filing[.]" (Dkt. #66, Brief at 3 & Exh. A).  In that motion, filed on June 2, 2008, plaintiff requested a stay of her seventy-two month sentence while appealing the Constitutionality of her sentence "due to the fact that in the plea agreement[,] defendant plead[ed] guilty to a twenty-four month sentence[,]" and plaintiff requested a stay of such sentence so that she "could pursue proper medical care[,]" for her "recent diagnosis of a torn rotator cuff which requires immediate surgery;" and a "[p]re-[e]xisting medical condition, of which the court was aware[.]" (Dkt. #66, Exh. A).   Also, in that motion, plaintiff in this case/defendant in that case, explained that "[t]he recent diagnosis [of the torn rotator cuff] developed from an incident . . . on May 4, 2008, when an [a]sthma attack caused defendant to fall on the floor." (Id.).  Defendant's reliance on a copy of this one-page  Motion to Stay Sentence for Medical Needs While Appeal is Pending does not satisfy its burden of establishing that plaintiff's medical claim, which is alleged as an FTCA claim in this case, was raised in plaintiff's previous criminal prosecution in the District of Massachusetts, nor does defendant establish that plaintiff's medical issues arising from the "asthma incident" were "actually litigated" and decided, that plaintiff had a full and fair opportunity to litigate this issue, and that the

7

resolution of plaintiff's medical issues arising out of the "asthma incident" was "necessary to support a valid and final judgment on the merits." Ball, 415 F.3d at 69.   In fact, defendant does not provide the Court with any evidence that the issue was in fact litigated in Massachusetts, the outcome of such litigation, or that this issue was central to a valid and final judgment issued in that case.

<u>2. PREVIOUS LITIGATION IN THIS DISTRICT</u>

Defendant also fails to satisfy its burden of establishing that this litigation is barred by collateral estoppel in light of plaintiff's previous action before United States District Judge Stefan R. Underhill. See Duverge v. Zickefoose, No. 3:09 CV 45(SRU), 2010 WL 466709 (D. Conn. Feb. 8, 2010).   Defendant contends that in that case, plaintiff made "vague references to the 'asthma' incident while at the same time making spurious complaints about the failure of the prison administration to feed her a proper diet."   (Dkt. #66, Brief at 4). In that case, which was commenced as a habeas corpus action, plaintiff "brought [the] action to challenge her medical care at [FCI Danbury], and to seek a stay of her sentence pending resolution of the appeal.   She also filed a separate motion to stay her sentence."   2010 WL 466709, at *1. Judge Underhil denied her Motion to Stay and "informed her that the court would only address the claims challenging the adequacy of her medical care at FCI Danbury." Id.   Then Judge Underhill denied plaintiff's Writ of Habeas Corpus as moot in that plaintiff sought "transfer to another correctional facility as relief for the claim regarding medical care[,]" and was transferred to FCI Waseca.   Id.   Judge Underhill explained that "[b]ecause [plaintiff] ha[d] received the precise relief she requested on the only remaining claim and because the defendants [were] no longer in a position to affect [plaintiff's] medical care, her case [was] moot." Id.   Thus, as plaintiff correctly observes, there was no final decision from Judge

8

Underhill about plaintiff's claims relating to the prison conditions, or specifically, relating to the precise issues in this case.  (Dkt. #67, at 2).

This case bears no resemblance to the <u>Faraday</u> case upon which defendant relies in support of its claim of issue preclusion.  In that case, Faraday, an inmate in the custody of the Department of Corrections ["DOC"], filed a habeas action in which he sought money damages resulting from the deliberate indifference by defendant Blanchette, a doctor employed by the DOC.  596 F. Supp. 2d at 510, 514-15.  Res judicata barred his Section 1983 claim for monetary damages as monetary damages are not available in a state habeas petition, but Judge Underhill then addressed "whether it would be <u>fair</u> to prevent Faraday from relitigating" his medical claims against Dr. Blanchette.  <u>Id.</u> at 515 (emphasis in original). In the underlying state habeas proceeding, "[t]he Connecticut Supreme Court, in a final judgment on the merits, concluded that [Faraday] had failed to present sufficient evidence that Blanchette's medical treatment and care was constitutionally inadequate and ordered his petition dismissed."  <u>Id.</u>  In the case before Judge Underhill, Faraday again alleged that Blanchette was deliberately indifferent to his known medical condition.  <u>Id.</u>  Judge Underhill concluded that collateral estoppel applied as Faraday's claim was "identical" to the issue that "was actually and necessarily decided by the Connecticut Supreme Court" in his state habeas; "as the sole basis of his state habeas petition, the Court's decision on the Eighth Amendment inadequate medical treatment issue was necessary to judgment[]"; and "most significantly, Faraday had a full and fair opportunity to present his Eighth Amendment claims in his state habeas proceeding."  <u>Id.</u> at 515-16.

In this case, defendant has not established – through its single reference that the action before Judge Underhill "contains vague references to the 'asthma' incident" – that the

issue in that case and the issue in this case are "identical[,]" nor has it shown that the issues were "necessarily decided in the prior action[,]" as the issue became moot in light of plaintiff's transfer to FCI Waseca, and therefore, unlike in <u>Faraday</u>, there was no finding as to the challenged medical care. <u>Ball</u>, 415 F.3d at 69.  Conversely, plaintiff has satisfied her "'burden of showing that the prior action did not afford a full and fair opportunity to litigate the issues[.]" <u>Proctor</u>, 715 F.3d at 414 (internal quotations & citation omitted).  Accordingly, plaintiff's medical claims as alleged under the FTCA in this case are not barred by collateral estoppel.

## B. EXPERT EVIDENCE TO SUPPORT A NEGLIGENCE CLAIM

Defendant contends that the negligence "as alleged by plaintiff in this case functionally amounts to a claim of malpractice[,]" "[i]n order to prosecute plaintiff's claims and the lingering effects from the treatment of the staff at FCI Danbury, plaintiff will need a competent medical expert to testify on her behalf[,]" and plaintiff "cannot offer any legally competent evidence to enable a reasonable trier of fact to return a verdict in her favor[]" as she has "no competent legal medical testimony[.]"  (Dkt. #66, Brief at 4-5)(citations omitted).  In response, plaintiff contends that the evidence is within defendant's control as defendant had her "MRI, and X-ray reports that show plaintiff needs surgery [sic] repairs in her [right] shoulder, [right] foot, and [right] knee, and [two] ankle braces [were] ordered for plaintiff['s] [right] foot." (Dkt. #67, Brief at 2).  Attached to plaintiff's complaint are her medical records following the incident that is the subject of this litigation.   (<u>See</u> Dkt. #1).

The FTCA is a limited waiver of the United States' sovereign immunity.  <u>See</u> 28 U.S.C. 2679(b)(1).  "The [FTCA] authorizes private tort actions against the United States 'under circumstances where the United States, if a private person, would be liable to the claimant

in accordance with the law of the place where the act or omission occurred.'" United States v. Olson, 546 U.S. 43, 44 (2005), quoting 28 U.S.C. § 1346(b)(1).  The FTCA requires a court to apply the tort laws of the State in which the alleged tort arose.  See Castro v. United States, 34 F.3d 106, 110 (2d Cir. 1994); see also Carlson v. Green, 446 U.S. 14, 23 (1980)("an action under FTCA exists only if the State in which the alleged misconduct occurred would permit a cause of action for that misconduct to go forward.").

In her complaint, plaintiff alleges medical negligence on behalf of prison officials who, "[d]ue to the lack of due diligence and delay in access to proper medical treatment[,]" caused plaintiff to "suffer[ ] . . . severe pain and numbness in her entire [right] side[.]" (Dkt. #1, at 5).  "Connecticut law requires that, before filing a medical malpractice claim, a reasonable inquiry must be conducted and a certificate of good faith accompanied by an opinion letter that medical negligence has occurred must be filed with the complaint."  Cole v. Greene, No. 3:11 CV 543 (SRU), 2013 WL 1759571, at *1 (D. Conn. Apr. 13, 2013), citing CONN. GEN. STAT. § 52-190a.  The purpose of section 52-190a is "to prevent frivolous medical malpractice actions."  Bennett v. New Milford Hosp., Inc., 300 Conn. 1, 18 (2011)(citation & internal quotations omitted).

A good faith certificate under section 52-190a, however, is not required in cases sounding in ordinary negligence.   "[T]o determine whether plaintiff's claims sound in medical malpractice or ordinary negligence[,]" the court takes into account three considerations:

> "[W]hether (1) the defendants are sued in their capacities as medical professionals, (2) the alleged negligence is of a specialized medical nature that arises out of the medical professional-patient relationship and (3) the alleged negligence is substantially related to medical diagnosis or treatment and involved in the exercise of medical judgment."

Beshara v. Charlotte Hungerford Hosp. Ctr. for Behavioral Health, No. CV136008907S, 2014

WL 660486, at *3 (Conn. Super. Ct. Jan. 21, 2014), quoting Trimel v. Lawrence & Memorial Hosp. Rehab. Ctr., 61 Conn. App. 353, 358, appeal dismissed, 258 Conn. 711 (2001). In this case, in addition to alleging medical malpractice against defendant in the "lack of, and delay in, access to treatment[]" of plaintiff's medical conditions that "required surgery[,]" plaintiff alleges that Counselor Perkins' negligence "provoked [p]laintiff to suffer an asthma attack[;]" Counselor Perkins "pulled and yanked on [p]laintiff's arm during her asthma attack which caused [p]laintiff's condition to worsen, and caused the injuries to [p]laintiff's [right] arm and [right] side[]"; and Counselor Perkins administered the "wrong medication [causing plaintiff to receive an] overdose." (Dkt. #1, at 1-5). The acts of Counselor Perkins[4] sound in negligence, not medical negligence. Plaintiff asserts that Counselor Perkins administered doses of another inmate's inhaler to plaintiff while she was having an asthma attack, but Counselor Perkins is not a medical professional. A medical malpractice claim "involves a medical professional's judgment, but when medical personnel commit tortious acts that do not require medical knowledge, do not exercise medical judgment and are not related to medical diagnosis or treatment, such acts constitute ordinary negligence, not medical malpractice." Beshara, 2014 WL 660486, at *6 (internal quotations, citation & alteration omitted). Plaintiff's relationship with Counselor Perkins did not arise out of a medical-professional relationship, and the alleged negligence does not relate to a medical judgment as Perkins is not a medical professional capable of such judgment and her actions were responsive, not to plaintiff's alleged asthma attack, but to a scenario which Perkins allegedly

---

[4]As discussed above, plaintiff's claim is brought under the FTCA. FTCA claims are not cognizable against individual federal officials; the proper defendant in an FTCA claim, as alleged in this case, is the United States. See Castro, 34 F.3d at 110 ("the FTCA makes individual government employees immune from common-law tort claims for acts committed within the scope of their employment").

viewed as a "mad attack[]" rather than an asthma attack. (Dkt. #1, at 2).  Plaintiff's

allegations of negligence by Counselor Perkins do not satisfy the prongs of the three part test

to determine whether a claim sounds in medical malpractice.  See Trimel, 61 Conn. App. at

358; see also Multari v. Yale New Haven Hosp., Inc., 145 Conn. App. 253, 257-61 (Conn.

App. 2013).

However, as to plaintiff's other allegations, consistent with section 52-190a,

defendant appropriately argues that plaintiff is required to "obtain a written opinion of an

appropriate medical discipline in order to bring a malpractice action." (Dkt. #66, Brief at 4).

In a case similar to this one, involving an inmate at FCI Danbury who brought a FTCA claim

against her treating doctor, the Federal Bureau of Prisons Danbury Health Services

Administrator, and the Warden of FCI Danbury, all of whom were later replaced by the

United States as the defendant,[5] Judge Underhill addressed defendants' assertion that

plaintiff's claim was subject to dismissal because the plaintiff failed to provide the "good faith

certificate."  Cole, 2013 WL 1759571, at *1.  In that case, Judge Underhill observed that

"[t]he Second Circuit has not yet determined whether the requirement of a certificate of good

faith in a medical malpractice action is a substantive or procedural requirement[,]" but that

the "Connecticut Supreme Court has held that the 'failure to provide a written opinion letter

. . . , constitutes insufficient process and, thus, service of that insufficient process does not

subject the defendant to the jurisdiction of the court. . . . The jurisdiction that is found

lacking, however, is the jurisdiction over the person, not the subject matter.'"  Id., quoting

Morgan v. Hartford Hosp., 301 Conn. 388, 401-02 (2011)(emphasis added in Cole).  Thus,

as Judge Underhill explained, the plaintiff's failure to comply with section 52-190a "implicates

---

[5]See note 4 supra.

13

not subject matter jurisdiction, but personal jurisdiction[,]" and it is "well settled that an objection to defective service, like any personal jurisdiction defense, is a privileged defense that can be waived by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct." Id. at *2 (citation & internal quotation omitted).  In Cole, defendant filed an answer with numerous affirmative defense, but none "ma[d]e any mention of section 52-190a or otherwise dispute[d] service of process or personal jurisdiction." Id. Defendant did not raise the issue of plaintiff's non-compliance with section 52-190a until it filed its motion to dismiss approximately nine months later. Id. Thus, Judge Underhill held that "[b]ecause the defendant failed to include that defense in its first responsive pleading, the defense has been waived the motion to dismiss on that basis must be denied." Id., citing Morgan, 301 Conn. at 404.

In this case, plaintiff filed her complaint on December 7, 2010. (Dkt. #1).  Defendant filed its answer on September 9, 2011 (Dkt. #7), which answer did not include any affirmative defenses, and as in Cole, defendant's answer did not "make mention of section 52-190a or otherwise dispute service of process or personal jurisdiction." 2013 WL 1759571, at *2.  Thus, just like Cole, to the extent defendant seeks summary judgment on grounds that plaintiff has failed to obtain a written opinion consistent with section 52-190a, this defense has been waived and summary judgment on that ground is denied. See id.[6]

Accordingly, defendant's Motion for Summary Judgment (Dkt. #66) is denied.[7]

---

[6]Defendant does not challenge plaintiff's ability to satisfy the substantive elements of her negligence and medial negligence claims.

[7]This conclusion, however, does not bar defendant from filing an appropriate Motion In Limine with respect to plaintiff's claims for medical malpractice, as opposed to her claims for negligence, at trial.  This ruling simply holds that plaintiff's non-compliance with section 52-190a is not grounds for denying her a trial when such non-compliance was not asserted as an affirmative defense by defendant, especially when there are negligence claims against non-medical staff in the

<u>III. CONCLUSION</u>

For the reasons set forth below, defendant's Motion for Summary Judgment (Dkt. #66) is <u>denied.</u>  The Court directs the Clerk's Office  to appoint <u>pro bono</u> counsel for the <u>pro se</u> plaintiff.   Once <u>pro bono</u> counsel has been appointed, the Court will schedule a telephonic status conference.

Dated this 7th day of April, 2014, at New Haven, Connecticut.

<div style="margin-left:40%">

  /s/ Joan G. Margolis, USMJ  
Joan Glazer Margolis
United States Magistrate Judge

</div>

_____

lawsuit.